**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **Jeffrey K. Landrum,** | ) | |
| **For himself and on behalf of all others** | ) | |
| **similarly situated** | ) | **Civil Action** |
| **Plaintiffs,** | ) | **File No.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **Acadian Ambulance Service, Inc., and** | ) | **Jury Trial Demanded** |
| **Acadian Ambulance Service of Texas, LLC** | ) | |
| **Defendant.** | ) | |
| | ) | |

## ORIGINAL CLASS ACTION COMPLAINT

PLAINTIFF, JEFFREY K. LANDRUM ("Plaintiff"), by and through his attorneys, and on behalf of himself, the Putative Classes set forth herein, and in the public interest, brings this class action complaint against Acadian Ambulance Service, Inc. and Acadian Ambulance Service of Texas, LLC ("Acadian" or "Defendant").   Plaintiff would respectfully show the Honorable Court as follows:

## I.
## INTRODUCTION

1.       This is a class action suit brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

2.       Acadian routinely obtains and uses information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information, in whole or in part, as a basis for adverse employment action.  Such adverse employment action includes the failure to hire, reduction of work hours, failure to promote, and employment termination.

3.      While the use of consumer report information for employment purposes is not *per se* unlawful, it is subject to strict disclosure and authorization requirements under the FCRA.

4.      Acadian has willfully violated these requirements in multiple ways, in systematic violation of Plaintiff's rights and the rights of other putative class members.

5.      Acadian violated 15 U.S.C. § 1681b(b)(3)(A) by taking adverse employment action against Mr. Landrum and other putative class members based on undisclosed consumer report information, without first providing Plaintiff and other affected class members a copy of the pertinent consumer report and without providing them a reasonable opportunity to respond to the information in the report and to discuss it with Acadian.

6.      Acadian also violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring consumer reports on Plaintiff and other putative class members for employment purposes, without first making proper disclosures in the format required by the statute.  Under this subsection of the FCRA, Acadian is required to disclose to its employees – ***in a document that consists solely of the disclosure*** – that it may obtain a consumer report on them for employment purposes, prior to obtaining a copy of their consumer report. *Id.* Acadian willfully violated this requirement in at least two respects: (1) Acadian buried these disclosures on the last page of a multi-page job application; and (2) Acadian inserted a liability release and other extraneous information into the portion of its job application that purports to grant Acadian the authority to obtain and use consumer report information.[1]

7.      Both of these practices violate longstanding regulatory guidance from the Federal Trade Commission ("FTC").

---

[1] See Exhibit – 1, p. 24.

8.      Finally, Acadian violated 15 U.S.C. § 1681b(b)(2)(A)(ii) by obtaining consumer reports on Plaintiff and other putative class members without proper authorization because Acadian's disclosure and authorization failed to comply with the requirements of the FCRA.

9.      Based on the foregoing violations, Plaintiff asserts multiple FCRA claims against Acadian on behalf of himself and two separate classes of Acadian employees and prospective employees (the "Putative Classes").

10.      In Count One, Plaintiff asserts an FCRA claim under 15 U.S.C. § 1681b(b)(3)(A) on behalf of an "Adverse Action Class" consisting of all employees or prospective employees of Acadian in the United States who (a) did not receive a pre-adverse action notice, or (b) received notice on or after May 26, 2009 that Acadian was taking adverse employment action against them based, in whole or in part, on information contained in a consumer report, and who were not provided a copy of such report in advance.

11.      In Counts Two and Three, Plaintiff asserts a pair of FCRA claims under 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) on behalf of a "Background Check Class" consisting of all employees or prospective employees of Acadian in the United States who were the subject of a consumer report procured by Acadian (or that Acadian caused to be procured) on or after May 26, 2009.

12.      On behalf of himself and these Putative Classes, Mr. Landrum seeks statutory damages, punitive damages, attorneys' fees and costs, and other appropriate relief because of Acadian's multiple willful violations of the FCRA.

## II.
## JURISDICTION AND VENUE

13.      Plaintiff, on behalf of himself and the Putative Classes, brings this action pursuant to a federal statute, the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.

14.     The Court has jurisdiction of the claims asserted herein pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

15.     Venue is proper in the United States District Court for the Southern District of Texas under 28 U.S.C. § 1391.  Mr. Landrum resides in this District, applied for a job with Defendant in this District, and his claims arise, in substantial part, in this District.  Acadian regularly conducts business in this District, and is subject to personal jurisdiction in this District.

### III.
### PARTIES

16.     Individual and representative Plaintiff Jeffrey K. Landrum ("Plaintiff" or "Mr. Landrum") is a resident of Harris County, Texas. Mr. Landrum is a member of each of the Putative Classes.

17.     Defendants Acadian Ambulance Service, Inc. and Acadian Ambulance Service of Texas, LLC (collectively, "Acadian" or "Defendant") conduct business in various parts of Texas (including Harris County, Texas), Louisiana and Mississippi.[2]

18.     Whenever alleged herein that Defendant committed any act or omission, it is meant that Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time the act or omission was committed, it was committed with full authorization, ratification or approval of Defendant or was done in the routine course and scope of employment of Defendant's officers, directors, vice-principals, agents, servants, or employees.

---

[2] See Exhibit – 2, Acadian Services Map that is a part of Acadian's website.

## IV.
## ALLEGATIONS REGARDING ACADIAN'S BUSINESS PRACTICES

***Acadian conducts employment background checks (including criminal background checks) during its hiring process.***

19.     Acadian conducts background checks, which include investigations of criminal history, of its job applicants as part of its standard screening and hiring process.

20.     In addition, Acadian periodically conducts such background checks on existing employees during the course of their employment.

21.     Acadian does not perform these background checks in-house. Rather, Acadian relies on outside consumer reporting firms to obtain this information and report it to Acadian. These reports constitute "consumer reports" for purposes of the FCRA, and each outside consumer reporting firm constitutes a "consumer reporting agency" under the FCRA.

22.     One of the outside consumer reporting firms Acadian utilizes is Kroll Background America, Inc., a subsidiary of HireRight, Inc. ("Kroll").

23.     Kroll is a "consumer reporting agency" under the FCRA.

***Acadian's violations of the FCRA relating to the Background Check Class.***

24.     Acadian procured consumer report information in violation of the FCRA.

25.     Under the FCRA, it is unlawful to procure a consumer report or cause a consumer report to be procured for employment purposes, unless:

> i)      a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, ***in a document that consists solely of the disclosure***, that a consumer report may be obtained for employment purposes; and

> ii)     the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report.

15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) [emphasis supplied].

26.     Acadian has repeatedly failed to comply with these disclosure and authorization requirements of the FCRA.

27.     Acadian has an online application process that guides a job applicant's search for specific job openings available at Acadian.[3]

28.     The set of sequential steps a candidate must follow in order to apply online for a job with Acadian is uniform for all job openings available in Texas, Louisiana and Mississippi, and these steps have not changed during the relevant 5-year statute of limitations period.

29.     On page 24 of a 30-page online employment application, Acadian purports to include in a lengthy paragraph, in obscurely small sized font, an authorization seeking permission to obtain the job applicant's background information for Acadian's hiring decision.

30.     The paragraph reads as follows:

"Acadian

Parent company of Acadian Ambulance Service, Acadian Monitoring Services, Safety Management Systems, Executive Aircraft Charger Service, and the National EMS Academy.

Application for Employment

Conditions of employment are stated at the end of this form. Please read carefully before you sign this application.

An Equal Opportunity Employer. Our employment decisions are made without regard to race, color, religion, age, sex, citizenship, ancestry, national origin, sexual orientation, disability, veteran status, military status, marital status, genetic information or any other characteristic protected by applicable federal, state, or local law.

Notification and Agreement

Please read before signing.

---

[3] See Exhibit – 1, a printout of the various online pages / steps a job candidate like Mr. Landrum must follow in order to search and apply for one or more job openings available at Acadian.

By submitting this application, I certify that all answers given by me are true, accurate, and complete. I understand that any falsification, misrepresentation or omission on this application (or any other accompanying or required documents) will be cause for denial of employment or immediate termination of employment, regardless of when or how discovered.

This application will be given every consideration, but its receipt does not imply that the applicant will be employed.

It is our company policy that all employees and applicants for employment be given equal opportunity without regard to age, race, religion, color, sex, national origin, marital status, expunged juvenile records, or pregnancy. In addition, our company grants equal opportunities to all disabled veterans, veterans of the Vietnam era, individuals with a disability and/or any other protected characteristics as identified by federal, state, and local laws.

I further understand that any offer of employment is conditioned on the completion of pre-employment testing and documentation. All information in this application will be investigated. My submission of this application indicates my agreement to, upon request, sign all necessary consent forms authorizing such tests and investigations. **I release from all liability anyone supplying such information, and I also release the employer from all liability that might result from making an investigation**.

If hired, I agree to abide by all the company rules and regulations, and understand that, if employed, I am employed at will and that my employment and compensation can be terminated with or without cause, and with or without notice, at any time, at the option of the company or me. I further understand that no representation, whether oral or written by any agent of the company, at any time, can constitute a contract of employment. I understand that the company and all Plan Administrators shall have the maximum discretion permitted by law to administer, interpret, modify, discontinue, enhance, or otherwise change all policies, procedures, benefits, or other terms or conditions of employment.

I acknowledge that I have read and understand the above statements, and agree to all items outlined above.

Enter your account password to sign this application

•••••••••
Required

<u>Submit Application</u>" [4]  [emphasis supplied]

31.     Acadian does not have a stand-alone FCRA disclosure or authorization form, and the paragraphs above do not comply with the FCRA's specific disclosure and authorization requirements.

32.     Acadian's practice violates the plain language of the statute, and flies in the face of unambiguous case law and regulatory guidance from the FTC. *See, e.g.*, *E.E.O.C. v. Video Only, Inc.*, No. 06-1362, 2008 WL 2433841, at *11 (D.Or. June 11, 2008) ("I grant summary judgment of liability that Video Only violated . . . 15 § 1681b(b)(2)(A)(I). This section provides that at any time before the report is procured, a disclosure is made in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes. Video Only disclosed this possibility as part of its job application, which is not a document consisting solely of the disclosure."); *see also*, Federal Trade Commission ("FTC") guidance ("The disclosure may not be part of an employment application . . . . A disclosure that is combined with many items in an employment application -- no matter how 'prominently' it appears -- is not 'in a document that consists solely of the disclosure' as required by [1681b(b)(2)(A)]."); [5] *see also*, FTC Staff Report at p. 51 ("The disclosure cannot be part of a printed employment application.").[6]

33.     By burying its purported disclosures on the twenty-forth (24th) page of its multi-page job application, Acadian willfully disregarded this case law and regulatory guidance, and willfully violated 15 U.S.C. §§ 1681b(b)(2)(A) by procuring consumer report information on

---

[4] See <u>Exhibit – 1</u>, pp. 23, 24.
[5] See <u>Exhibit – 3</u>.
[6] See <u>Exhibit – 4</u>.

employees and prospective employees without complying with the disclosure and authorization requirements of the statute.

34.     Moreover, Acadian's above-referenced authorization in paragraph 30 of this Complaint does not consist solely of a disclosure and authorization to obtain consumer report information. In addition, the paragraph contains the following release language: "I release from all liability anyone supplying such information, and I also release the employer from all liability that might result from making an investigation." [7]

35.     The insertion of such a release of liability by Acadian also is contrary to the plain language of the statute and longstanding regulatory guidance. The FTC warns that "the form should not include any extraneous information."[8]  In fact, the FTC further warns specifically that "[t]he inclusion of such a waiver [of liability] in a disclosure form will violate Section 604(b)(2)(A) of the FCRA [15 U.S.C. §§ 1681b(b)(2)(A)], which requires that a disclosure consist 'solely' of the disclosure that a consumer report may be obtained for employment purposes." *Id*.

36.     By including such an extraneous release, Acadian willfully disregarded this regulatory guidance, and willfully violated 15 U.S.C. §§ 1681b(b)(2)(A) by procuring consumer report information on employees without complying with the disclosure and authorization requirements of the statute.

***Acadian's violations of the FCRA relating to the Adverse Action Class.***

37.     The FCRA requires that "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates … a copy of

---

[7] See Exhibit 1, p. 24.
[8] See Exhibit – 5.

the report[.]" 15 U.S.C. § 1681b(b)(3)(A)(i).

38.    Acadian typically does not supply job applicants or employees a copy of their consumer reports prior to taking such adverse action against them.

39.    This practice violates one of the most fundamental protections afforded to prospective and current employees under the FCRA, and also runs counter to longstanding regulatory guidance. See Exhibit 6 ("[15 U.S.C. § 1681b(b)(3)(A)] requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken. Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action. Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information …").[9]

40.    By failing to supply Plaintiff and Putative Class members a copy of their respective consumer report prior to taking adverse employment action against them based on such reports, Acadian willfully disregarded this regulatory guidance and the plain language of the statute in violation of 15 U.S.C. §§ 1681b(b)(2)(A).

**V.**
**ALLEGATIONS RELATING TO PLAINTIFF LANDRUM**

41.    Mr. Landrum applied for work with Acadian on July 10, 2013, and in this regard, Mr. Landrum completed Acadian's online employment application.[10]

42.    Following completion of his employment application, Mr. Landrum periodically inquired about Acadian's employment decision.[11]

43.    On September 12, 2013, Acadian informed Mr. Landrum that he was scheduled

---

[9] See Exhibit – 6.
[10] See Exhibit – 1.
[11] See Exhibit – 7.

for a job interview with Ms. Barbara Hughes on September 25, 2013. [12]

44.    On September 25, 2013, as scheduled, Mr. Landrum interviewed with Ms. Barbara Hughes, an employee of Acadian.

45.    On September 26, 2013, Ms. Hughes ordered a criminal background report from Kroll pertaining to Mr. Landrum.[13]

46.    On October 25, 2013, Acadian informed Mr. Landrum that the company had decided not to hire him.[14]

47.    On November 18, 2013, Mr. Landrum submitted an email to Ms. Hughes inquiring about the details of Acadian's decision not to hire him.[15]   Mr. Landrum received no response from Ms. Hughes or from any other employee of Acadian.

48.    Importantly, at no time subsequent to Mr. Landrum's July 10, 2013, application for employment did Acadian supply Mr. Landrum a copy of his consumer background report.

49.    As a result, Mr. Landrum was deprived of any opportunity to review the information in the report and discuss it with Acadian before the company took adverse action against him on October 25, 2013. [16]

50.    It was unlawful for Acadian to deny employment on the basis of information contained in a consumer report that was never shared with Mr. Landrum.  It also was unlawful for Acadian to procure a consumer report on Mr. Landrum without first obtaining proper authorization and making the mandatory and specific disclosures required by the FCRA.

---

[12] See Exhibit – 7, p. 9.
[13] See Exhibit – 8.
[14] See Exhibit – 7, p. 10.
[15] See Exhibit – 7, p. 1.
[16] Only after Mr. Landrum's counsel contacted Acadian's Human Resources department in early May 2014 and sought a copy of Plaintiff's background report was he made aware of Kroll; and on May 13, 2014, after Plaintiff contacted Kroll did he receive a copy of his background report from Kroll. As such, Mr. Landrum became aware that Ms. Hughes and Acadian had ordered at least one consumer report from Kroll pertaining to him, which report was never supplied to Plaintiff as required under the FCRA.

## VI.
## CLASS ACTION ALLEGATIONS

51.     Mr. Landrum asserts his claim in Count 1 on behalf of a Putative Adverse Class

defined as follows:

> **Proposed Adverse Action Class:**  All employees or prospective employees of
> Acadian who received notice on or after May 26, 2009 (or who did not receive
> any notice) that Acadian was taking adverse employment action against them
> based, in whole or in part, on information contained in a consumer report, and
> who were not given a copy of the consumer report in advance.

52.     Plaintiff asserts his claim in Counts 2 and 3 on behalf of a Putative Background

Check Class defined as follows:

> **Proposed Background Check Class:**  All employees or prospective employees
> of Acadian who were the subject of a consumer report procured by Acadian (or
> that Acadian caused to be procured) on or after May 26, 2009.

53.     Numerosity under Fed. R. Civ. P. 23(a): The Putative Classes are so numerous

that joinder of all class members is impracticable. Acadian regularly purchases and utilizes

information in consumer reports to conduct background checks on prospective employees and

existing employees, and frequently relies on such information, in whole or in part, as a basis for

adverse employment action. Upon information and belief, during the relevant time period, more

than one thousand employees and prospective employees satisfy the definition of the Putative

Classes. Information concerning the exact size of the Putative Classes is within the exclusive

possession of Acadian.

54.     Typicality under Fed. R. Civ. P. 23(a): Plaintiff's claims are typical of the

members of the Putative Classes. Acadian typically uses consumer reports to conduct

background checks on employees and prospective employees. Acadian typically requires job

applicants to sign its background check authorization that is part of a multi-page online

employment application and includes a liability release. Acadian typically does not provide

copies of consumer reports to employees or prospective employees before taking adverse action based on information contained in such reports. The FCRA violations Plaintiff suffered are typical of those suffered by other members of the Putative Classes, and Acadian treated Plaintiff consistent with other Putative Class members in accordance with its standard policies and practices.

55.    <u>Adequacy under Fed. R. Civ. P. 23(a)</u>: Plaintiff will fairly and adequately protect the interests of the Putative Classes, and has retained counsel experienced in complex class action litigation.

56.    <u>Commonality under Fed. R. Civ. P. 23(a)</u>: Common questions of law and fact exist solely because of Defendant's acts or omissions, and not because of any individual plaintiff's specific actions. Common questions of law and fact exist as to all members of the Putative Classes and predominate over any questions solely affecting individual members of the Putative Classes, including but not limited to:

    a.    Whether Acadian violated the FCRA by failing to meet the strict and mandatory requirements or proscriptions of:

        i)    15 U.S.C. § 1681b(b)(2)(B)(i);
       ii)    15 U.S.C. § 1681b(b)(2)(B)(ii);
     iii)    15 U.S.C. § 1681b(b)(3)(B)(i)(I);
     iv)    15 U.S.C. § 1681b(b)(3)(B)(i)(II);
      v)    15 U.S.C. § 1681b(b)(3)(B)(i)(III);
     vi)    15 U.S.C. § 1681b(b)(3)(B)(i)(IV); and,
    vii)    15 U.S.C. § 1681g(c)(3).

    b.    Whether Acadian uses consumer report information to conduct background checks on employees and prospective employees;

    c.    Whether Acadian requires its employees and prospective employees to sign an authorization similar to the authorization contained in its online employment application and set forth in paragraph 30 of this Complaint;

    d.    Whether such authorization complies with the FCRA;

e.  Whether it was proper under the FCRA for Acadian to include the authorization in a multi-page job application;

f.  Whether it was proper under the FCRA for Acadian to include a liability release in the authorization;

g.  Whether it was proper under the FCRA for Acadian to include other extraneous language in the authorization;

h.  Whether Acadian violated the FCRA by procuring consumer report information without making mandatory and proper disclosures in the specific format required by the FCRA;

i.  Whether Acadian violated the FCRA by procuring consumer report information based on invalid authorizations;

j.  Whether Acadian violated the FCRA by taking adverse action against Plaintiff and other members of the Adverse Action Class on the basis of information in a consumer report, without first furnishing a copy of the report to the affected persons;

k.  Whether Acadian's violations of the FCRA were willful; and,

l.  The proper measure of statutory damages under the FCRA.

57.  This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the Putative Classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant. Further, adjudication of each individual Class member's claim as separate action would potentially be dispositive of the interest of other individuals not a party to such action, impeding their ability to protect their interests.

58.  This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Acadian has acted or refused to act on grounds that apply generally to the Putative Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

59.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Classes predominate over any questions affecting only individual members of the Putative Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common (and multiple) violations of the FCRA.

60.     Members of the Putative Classes do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendant by any members of the Putative Classes on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices.

61.     Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

62.     Mr. Landrum intends to send notice to all members of the Putative Classes to the extent required by Fed. R. Civ. P. 23. The names and addresses of the Putative Class members are available from Defendant's records.

## VII.
## CLAIMS FOR RELIEF

### First Claim:
### Willful violation of 15 U.S.C. 1681b(b)(3)(A) – Failure to supply consumer report

63.     Plaintiff alleges and incorporates by reference all allegations asserted in the previous paragraphs.

64.     Acadian used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and other members of the Adverse Action Class.

65.     Acadian violated 15 U.S.C. § 1681b(b)(3)(A) by failing to provide Plaintiff and other Adverse Action Class members a copy of the consumer report that was used to take adverse employment action against them.

66.     The foregoing violations were willful. Acadian acted in knowing or reckless disregard of its obligations and the rights of Plaintiff and other Adverse Action Class members under 15 U.S.C. § 1681b(b)(3)(A).   Acadian's willful conduct is reflected by, among other things, the following facts:

    a. Acadian purchases a large volume of prospective and current employees' background reports that subjects it to ongoing compliance requirements under the FCRA, and Acadian is a large corporation with access to legal advice through either its own counsel or outside employment counsel, and there is no contemporaneous evidence that Acadian determined that its conduct was lawful;

    b. Acadian knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the FCRA;

    c. Acadian voluntarily ran a risk of violating the FCRA substantially greater than the risk associated with a reading of the statute that was merely careless;

    d. Kroll, the consumer reporting agency that sold Plaintiff's and the putative class members' consumer background report information, gave specific and clear notice to Acadian of its legal obligations each time it delivered a consumer report to Acadian;

    e. Acadian repeatedly supplied a certification to Kroll in accordance with the FCRA that as the employer, Acadian has provided the employee, in advance, the necessary notices and disclosures required under the FCRA; that Acadian obtained the employee's advance written permission to procure the consumer report from Kroll; and, that Acadian intends to use the consumer report for employment purposes (that is, employment decisions on hiring, firing, promoting, reassigning, and retaining employees);

    f. Acadian also repeatedly certified to Kroll, in advance or at the time of

obtaining each consumer report, that Acadian will further comply with its obligations under the FCRA in the event that it chooses to take an adverse action against the employee based on information in the consumer report; [17]

g.  Acadian's employment application does not state that a consumer report automatically will be provided to employees or prospective employees if Acadian intends to take adverse action against them based on information in a consumer report. Rather, Acadian places the burden on the affected individual to request a copy of his or her report from the credit reporting agency, and only if the individual has independent knowledge of his ability to seek a copy of the report;

h.  Despite the fact that Plaintiff Landrum was not selected for employment with Acadian based in whole or in part on Kroll's consumer report pertaining to him, Acadian did not inform Mr. Landrum that he had a legal right to receive a copy of his consumer background report from Acadian, and as such, Mr. Landrum in fact did not receive a copy of his background report in a timely manner;

i.  Acadian repeatedly violated the FCRA and its failure to provide Plaintiff and other Adverse Action Class Members copies of their consumer reports was not accidental.[18]

67.    Plaintiff and the Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).  These damages arise from the statutory violations of FCRA, and each such incident causing damage is in and of itself, an "injury-in-fact", providing standing to Plaintiff and to members of the Putative Classes, and further conferring the Court with subject matter jurisdiction over the matter.[19]

68.    Plaintiff and the Adverse Action Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

---

[17] Assuming Kroll complied with the FCRA, only after Acadian had made these legally required certifications could Kroll have issued any consumer report to Acadian.

[18] See Exhibit – 9, at page 12 (Exhibit – 9 is a copy of a recent study reporting that many large employers are "routinely" failing to provide background checks to employees in violation of the FCRA, and are being found liable under the statute in federal courts as defendants in class actions).

[19] See Exhibit – 10, *Mabary v. Hometown Bank, N.A.*, 888 F. Supp. 2d 857 (S.D. Tex. 2012) (Hon. J. Ellison).

**Second Claim:**
**Willful violation of 15 U.S.C. 1681b(b)(2)(A)(i) – Failure to make proper disclosures**

69.     Plaintiff alleges and incorporates by reference all allegations asserted in the previous paragraphs.

70.     The employee background check authorization that Plaintiff and other members of the Background Check Class were required to complete as a condition of their employment with Acadian does not satisfy the disclosure requirements of 15 U.S.C. § 1681b(b)(2)(A)(i) because (1) the disclosure and authorization is not a stand-alone document; (2) the disclosure and authorization is buried in a multi-page job application; (3) the disclosure and authorization includes an a release of liability prohibited under the law; and (4) the disclosure and authorization includes extraneous language prohibited under the law.

71.     Acadian violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring consumer reports relating to Plaintiff and other Background Check Class members without first making proper disclosures in the format required by the FCRA.

72.     Acadian knew that the disclosure pertaining to the possibility of obtaining a background report, and its authorization, must be a stand-alone form (separate from the employment application), and should not include items not strictly prescribed by the FCRA.

73.     Acadian acted in knowing or reckless disregard of its obligations and the rights of Plaintiff and other Background Check Class members under 15 U.S.C. § 1681b(b)(2)(A)(i).

74.     Each foregoing violation was willful. Acadian's willful conduct is reflected by, among other things, the facts stated in Section VII – First Claim for Relief.

75.     Plaintiff and the Background Check Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

76.     These damages stem from the statutory violations of FCRA, and each such instance of damage is in and of itself, an "injury-in-fact", providing standing to the Plaintiff and to members of the Putative Classes, and further conferring the Court with subject matter jurisdiction over the matter.[20]

77.     Plaintiff and the Background Check Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

**Third Claim:**
**Willful violation of 15 U.S.C. 1681b(b)(2)(A)(ii) – Failure to obtain proper authorization**

78.     Plaintiff alleges and incorporates by reference all allegations asserted in the previous paragraphs.

79.     Acadian violated 15 U.S.C. § 1681b(b)(2)(A)(ii) by procuring consumer reports relating to Plaintiff and other Background Check Class members without proper authorization.

80.     The foregoing violations were willful. Acadian acted in knowing or reckless disregard of its obligations and the rights of Plaintiffs and other Background Check Class members under 15 U.S.C. § 1681b(b)(2)(A)(ii).

81.     Acadian's willful conduct is reflected by, among other things, the facts stated in Section VII – First Claim for Relief.

82.     Plaintiff and the Background Check Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

83.     These damages stem from the statutory violations of FCRA, and each such instance of damage is in and of itself, an "injury-in-fact", providing standing to the Plaintiff and to members of the Putative Classes, and further conferring the Court with subject matter

---

[20] Exhibit – 10.

jurisdiction over the matter. [21]

84.     Plaintiff and the Background Check Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

## VIII.
## DEMAND FOR JURY TRIAL

85.     In accordance with Fed. R. Civ. P. 38(b), Plaintiff and members of the Putative Classes herein make formal demand for a trial by jury.

## IX.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jeffrey K. Landrum, on behalf of himself and members of the Putative Classes, prays for relief as follows:

a.  Determining that this action may proceed as a class action under Rules 23(b)(1), (2) and (3) of the Federal Rules of Civil Procedure;

b.  Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Putative Classes;

c.  Issuing proper notice to the Putative Classes at Acadian's expense;

d.  Declaring that Acadian committed multiple, separate violations of the FCRA;

e.  Declaring that Acadian acted willfully in knowing or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

f.  Awarding statutory damages as allowed by the FCRA;

g.  Awarding reasonable attorneys' fees and costs as allowed by the FCRA; and,

h.  Granting other and further relief as this Court may deem appropriate and just.

---

[21] Exhibit – 10.

Respectfully submitted,

**ALI  S. AHMED, P.C.**

By:   /s/ Salar Ali Ahmed          
      **Salar Ali Ahmed**
      Federal Id. No. 32323
      State Bar No. 24000342
      One Arena Place
      7322 Southwest Freeway, Suite 1920
      Houston, Texas 77074
      Telephone:   (713) 223-1300
      Facsimile:   (713) 255-0013
      aahmedlaw@gmail.com

      **Attorney for Plaintiff**
      **Jeffrey K. Landrum, and**
      **Members of the Putative Classes**

[Exhibits follow]